## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **AMY ROBERTSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 11-1368-JWL** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This case is before the court on Plaintiff's pro se[1] complaint pursuant to 42 U.S.C.

§ 405(g) seeking judicial review of the decision of the Commissioner of Social Security

(hereinafter Commissioner) which awarded Supplemental Security income (SSI) benefits

to Plaintiff under §§ 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C.

§§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act).

In a decision issued on June 10, 2010, Plaintiff was found to be disabled within the

meaning of the Social Security Act as the result of a combination of severe impairments

including "borderline personality disorder," and was awarded SSI benefits. (Doc. 8,

---

[1]Because Plaintiff proceeds pro se before this court, the court construes her
pleadings liberally. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Travis v. Park City
Mun. Corp., 565 F.3d 1252, 1254 (10th Cir. 2009). But, the court will not assume the
role of advocate for Plaintiff. Garrett v. Selby Conner Maddux & Janer, 425 F.3d 836,
840 (10th Cir. 2005).

Attach. 2, pp. 11-16 (R. 11-16)).[2]  Plaintiff disagrees with the Commissioner's finding

that she has "borderline personality disorder," and objects to any factual conclusions

related thereto "because they are unsupported by the evidence and/or they are evidence of

an abuse of discretion" on the part of the Commissioner.  (Doc. 1, p.3) (hereinafter

Complaint).  Plaintiff filed her complaint in this case on November 28, 2011 asserting

that this court has jurisdiction to review the Commissioner's decision pursuant to 42

U.S.C. § 405(g), asking the court to modify the decision and strike the finding of

"borderline personality disorder," and seeking an award of actual and punitive damages in

the amount of $250,000 each.

    The Commissioner did not file an answer, but on May 31, 2012 filed a "Motion to

Dismiss Plaintiff's Complaint" along with exhibits in support.  (Docs. 7, 8).  The court

finds in accordance with the certification of James Jones, the Chief, Court Case

Preparation and Review Branch 2, Office of Appellate Operations, Office of Disability

Adjudication and Review, of the Social Security Administration that the "Exhibits in

Support of Motion to Dismiss Plaintiff's Complaint" (Doc. 8) (along with the attachments

---

[2]The court notes that Docket #8 is entitled "Exhibits in Support of (7) Motion to
Dismiss Plaintiff's Complaint."  The main document filed as Docket #8, is a
"Certification" by James Jones, the Chief, Court Case Preparation and Review Branch 2,
Office of Appellate Operations, Office of Disability Adjudication and Review, of the
Social Security Administration.  Mr. Jones certifies "that the documents annexed hereto
constitute a full and accurate transcript of the entire record of proceedings relating to this
case."  (Doc. 8).  Ten attachments were filed with Docket #8 which the court recognizes
as the administrative record of proceedings before the Commissioner of Social Security in
the underlying case.  Further citation to evidence contained in Docket #8, where possible,
will be to the page numbers appearing in the administrative record. E.g., (R. 11-16).

thereto) constitute the transcript of the administrative record before the Commissioner in this case.  See, footnote 2, above.  The Commissioner argued that dismissal is proper because Plaintiff has no statutory or constitutional standing to appeal a fully favorable decision, because Plaintiff's complaint does not state a claim upon which relief may be granted, and because Plaintiff is not entitled to monetary damages.  (Doc. 7) (Hereinafter, Mot. to Dismiss).

On June 19, 2012 Plaintiff filed a "Motion for Extension" seeking additional time to respond to the Commissioner's motion.  (Doc. 9).  The court granted Plaintiff's motion on June 20, 2012, and extended the deadline to respond to the Motion to Dismiss until July 23, 2012.  (Doc. 10).  On the same day that the court granted her motion for extension of time, Plaintiff filed a "Motion for Extension Supplement" seeking a 90-day extension to file her response to the Commissioner's motion.  (Doc. 11).  The court granted Plaintiff's motion in a "Scheduling Order," directing Plaintiff to file her Social Security Brief and her response to the Commissioner's Motion to Dismiss no later than September 24, 2012, and noting that the court "will not look favorably upon further requests for extension of time by Plaintiff in this matter."  (Doc. 12).

On September 24, 2012, Plaintiff filed a second Motion for Extension of Time seeking an additional 90 days to respond to the Commissioner's motion to dismiss, and to file her Social Security Brief, arguing that undue hardships, unforeseen circumstances, and medical treatment necessitated the extension.  (Doc. 13).  Despite its statement in the Scheduling Order that it would "not look favorably upon further requests for extension of

3

time by Plaintiff in this matter," and because Plaintiff appears pro se, the court exercised

its discretion to grant Plaintiff's motion.  (Doc. 14).  Finding that a 90-day extension of

time would require Plaintiff's brief to be filed on December 26, they day after the

Christmas holiday, the court further extended the time to require Plaintiff to file her brief

and response to the Motion to Dismiss on January 7, 2013, the fourth business day

following the New Year's holiday.  Id.  Morever, the court notified Plaintiff "that its

grace and patience is not without limit, and it will not grant further requests for extension

of time to Plaintiff in this matter absent extreme circumstances much more significant

than continuation of her disability and medical condition, or the press of additional

medical treatment."  Id.

Despite the court's warning, on January 4, 2013, Plaintiff once again filed an

"Affidavit in Support of Motion, pursuant [to] Local Rule 77.2(a)(2)," seeking an

extension of time of 14 days, and asserting that Plaintiff's immune system had been

jeopardized, and she was sick from December 20 - December 30, 2012.  (Doc. 16).  The

court noted that Plaintiff has been given more than 190 days additional time to provide

her Social Security Brief and to respond to the Commissioner's Motion to Dismiss, that

Plaintiff has not shown the extreme circumstances which the court warned her would be

necessary were she to seek further extension in this case, and that in the more-than-a-year

since Plaintiff filed her complaint in this matter, she has done nothing to move the case

forward except to ask for more time.  (Doc. 17).  The court denied Plaintiff's Motion, and

noted that it would consider the Commissioner's Motion to Dismiss and, if necessary,

4

begin its judicial review of the final decision of the Commissioner, on January 14, 2013. Id. Nevertheless, the court again exercised lenity and informed Plaintiff that any brief or responsive argument filed on or before that date would be considered by the court. Id.

After the court denied Plaintiff's motion, Plaintiff filed a "Second Affidavit in Support of Motion [for Extension of Time]" on January 8, 2013 providing more detail to her motion. (Doc. 19). The court considered the "affidavit," but found no reason to alter its decision to deny an extension of time. However, in the "affidavit," Plaintiff also asserted that the administrative record contains "extremely confidential" personal information regarding her family, and requested that the court seal the record documents which contain such information. Id. at 4 (hereinafter "Mot. to Seal"). The court construes Plaintiff's "affidavit" as a motion to seal the record, and will consider that motion herein. Thereafter, Plaintiff filed her response to the Commissioner's Motion to Dismiss, and her Social Security Brief in a single document on January 14, 2013. (Doc. 21) (hereinafter Pl. Response). The Commissioner filed a Reply on January 25, noting that he relied upon his Motion to Dismiss. (Doc. 22). The matter is now ripe. The court begins with consideration of Plaintiff's Motion to Seal the record.

## I.      Plaintiff's Motion to Seal the Record

As the court noted above, in Plaintiff's "Second Affidavit" she asserted that the record in this case contains "extremely confidential" personal information regarding the death of her son, and requested that the documents containing that information be sealed. (Doc. 19, Mot. to Seal, 4). The court has reviewed the administrative record in this case

5

and has determined that it does, in fact, include documents containing such confidential

information.

The court notes that the documents at issue are a part of the administrative record

in this case, and as such are judicial records to which there is a recognized common-law

right of public access.

> Although "[c]ourts have long recognized a common-law right of access to judicial records," this right "is not absolute." Mann v. Boatright, 477 F.3d 1140, 1149 (10th Cir. 2007). Accordingly, this Court, "in its discretion, may seal documents if the public's right of access is outweighed by competing interests." United States v. Hickey, 767 F.2d 705, 708 (10th Cir. 1985) (internal quotation marks omitted). "In exercising this discretion, we weigh the interests of the public, which are presumptively paramount, against those advanced by the parties." Crystal Grower's Corp. v. Dobbins, 616 F.2d 458, 461 (10th Cir. 1980). "The party seeking to overcome the presumption" of public access to the documents "bears the burden of showing some significant interest that outweighs the presumption." Mann, 477 F.3d at 1149 (internal quotation marks omitted).

Helm v. Kansas, 656 F.3d 1277, 1292 (10th Cir. 2011) (footnote omitted).

The records to which the right of public access applies in this case are those

records which relate the basis and justification for Plaintiff's application for public

assistance in the form of SSI benefits, and the records relating to the Commissioner's

consideration and determination of eligibility for those benefits. However, there is no

right of access to information regarding the circumstances surrounding the death of

Plaintiff's son who was never a party to these proceedings. Moreover, the circumstances

of his death are at most tangentially related to the issues presented in this case, but when

laid bare before the public are potentially very hurtful to Plaintiff and to the rest of his

family, who daily suffer from his loss.  The public's right to access to judicial records does not include the right to pry into the most private and potentially hurtful details of personal and family life.  The court finds that Plaintiff has shown a significant interest that outweighs the need for public access to the records at issue here.  Therefore the court orders that the Clerk of the Court shall seal the administrative record in this case (Doc. 8, and its attachments).

## II.   The Commissioner's Motion to Dismiss

The Commissioner's motion to dismiss argues four bases allegedly justifying the determination that Plaintiff's Complaint should be dismissed.  He argues that the court lacks subject matter jurisdiction over this case because Plaintiff does not have either statutory standing or constitutional standing to appeal a decision which allowed benefits and which the Commissioner characterizes as "fully favorable."  He also argues that this case must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted because even if all of Plaintiff's allegations are accepted as true and if the facts are construed in the light most favorable to Plaintiff, there is no relief which the court might afford to Plaintiff which would correct the allegedly erroneous finding of "borderline personality disorder," because Plaintiff has already been awarded the SSI benefits to which she is, and would be, due.  Finally, he argues that Plaintiff's claims for actual and punitive damages in the amount of $250,000 each must be dismissed because the Social Security Act does not provide for money damages.  In her Response, Plaintiff asserts that she has standing, that her complaint

7

states a claim upon which relief may be granted, and that she should be awarded both

actual and punitive damages in the amount of $250,000 each.  The court addresses each

argument in the order presented in the Commissioner's motion.

A.    Standing

The Commissioner first argues that the court is without subject matter jurisdiction

over this case because Plaintiff has neither statutory standing nor constitutional (Article

III) standing to appeal the Commissioner's fully favorable decision.  He argues that

statutory standing is lacking because 42 U.S.C. § 405(g) provides the exclusive remedy

for judicial review of claims arising under the Social Security Act, and the Act does not

provide for review of fully favorable decisions.  (Mot. to Dismiss 3) (citing Buck v. Sec'y

of Health and Human Servs., 923 F.2d 1200, 1203 (6th Cir. 1991) (citing Allen v. Wright,

468 U.S. 737, 751 (1984)); and Coles[3] v. Astrue, No 10-CV-4751, 2012 WL 695849 *3

(E.D.N.Y. Mar. 5, 2012) ("[j]udicial review over Social Security determinations pursuant

to 42 U.S.C. § 405(g) makes no provision for judicial review of a determination favorable

to the complainant.") (quoting Heller v. Comm'r of Soc. Sec., 328 F. App'x 74, 75 (2nd

Cir. 2009))).  The Commissioner quotes sentence five of 42 U.S.C. § 405(g) and argues

that judicial review is only available for claims that have been denied or decisions that are

adverse to Plaintiff.  (Mot. to Dismiss 4) (citing Jones v. Califano, 576 F.2d 12, 18 (2nd

Cir. 1978) ("Section 405(g) assumes as a condition for judicial review that the

---

[3]The Commissioner captioned this case Cole v. Astrue.  (Mot. to Dismiss 3).

8

determination by the Secretary after a § 405(b) hearing will be adverse to the claimant of benefits.  It makes no provision for judicial review of a determination favorable to the complainant.")).  In the conclusion of his statutory standing argument, the Commissioner argues that judicial review under § 405(g) is "limited to the question of conformity with the Social Security regulations and validity of those regulations," that "Plaintiff does not challenge the Commissioner's fully favorable decision on either of those grounds," and that, consequently she does not have statutory standing to bring this action.  Id. at 4-5.

With regard to constitutional standing, the Commissioner argues that a prevailing party is generally not entitled to federal appellate review, that a party can only appeal a decision that denies at least part of the remedy requested, and that because the decision below was a fully favorable decision, Plaintiff is not an "aggrieved" party.  Id. at 5 (citing Camreta v. Greene, ___ U.S. ___, ___, 131 S. Ct. 2020, 2029 (2011); Forney v. Apfel, 524 U.S. 266, 271 (1998); and Deposit Guaranty Nat. Bank v. Roper, 445 U.S. 326, 333 (1980)).  The Commissioner argues that Article III standing requires Plaintiff to show (1) an injury in fact, (2) a causal relationship between the injury and the challenged action, and (3) a likelihood that the injury will be redressed by a favorable decision. (Mot. to Dismiss 5-6) (citing Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998)).  He argues that Plaintiff cannot meet the first requirement because she cannot show some actual or threatened injury as a result of the allegedly illegal conduct of the Commissioner.  Id. at 6.  He further argues that Plaintiff cannot show the third requirement--that even assuming there is an actual injury, Plaintiff cannot show any

likelihood that the injury can be redressed by a favorable decision of this court.  Id.  He

argues that a favorable decision here "would not result in any further benefits as Plaintiff

has received all the benefits to which she is entitled," and that a decision on the merits

"would not affect her rights to disability benefits."  Id. at 7.   In his final argument in this

regard, the Commissioner notes that Plaintiff asks the court to affirm the Commissioner's

finding of disability and "to modify the decision to show that she does not have

borderline personality disorder," and argues that judicial review is "limited to a

determination of whether the decision is free from legal error and supported by

substantial evidence in the record," and that "the court cannot rewrite the ALJ's

[Administrative Law Judge's] decision as Plaintiff requests."  Id. (emphasis in original).

A proper understanding of Plaintiff's complaint and of 42 U.S.C. § 405(g) will

demonstrate the error in the Commissioner's standing arguments.  Plaintiff asserts that the

court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).  (Complaint 3).  In

her "Statement of Claim," she argues that she "adamantly disagree[s]" with the ALJ's

finding that she has borderline personality disorder, and asks the court to review the

Commissioner's June 10, 2010 decision "and modify it so that the phrase 'borderline

personality disorder' and its alleged diagnosis and any factual conclusions related thereto

are deleted and erased from the decision because they are unsupported by the evidence

and/or they are evidence of an abuse of discretion."  Id.  For her relief, Plaintiff asks the

court to affirm the award of benefits, modify it as stated in her "Statement of Claim," and

affirm the decision as so modified.  Id. at 4.  She also seeks actual and punitive damages

10

in the amount of $250,000 each.  Id.  Construing Plaintiff's pleadings liberally, she is

arguing that the ALJ's finding of borderline personality disorder is erroneous, is an abuse

of discretion, and is not supported by substantial evidence, and that she is personally

damaged by that finding to the extent of $250,000.  The Commissioner argues that

Plaintiff has neither statutory nor constitutional standing to make those claims.

The Commissioner argues over and over again that Plaintiff cannot appeal a fully

favorable decision, and points to several cases in which a court has stated that the Social

Security Act does not provide for judicial review of fully favorable decisions.  However,

it does not appear that in any of the cases cited there was any question or argument over

whether the decision at issue in that case was truly fully favorable.  In Buck, the court

stated that the decision under consideration was fully favorable and that the claimant

cannot seek judicial review because, "[i]f the individual has fully prevailed on his or her

claim, he or she has no standing to appeal because he or she has received all the relief sought,

leaving no case or controversy."  Buck, 923 F.2d at 1203.  That case was premised on the fact

that Buck had "fully prevailed" and therefore had no remaining case or controversy.  In

Buck, there simply was no argument otherwise.  Coles is to a similar effect.  Although the

court stated the unremarkable legal principal that 42 U.S.C. § 405(g) makes no provision for

judicial review of a determination favorable to the complainant, that case contains no indication

that the Commissioner's decision was unfavorable to Coles in any respect.  Coles, 2012 WL

695849 at *3.  The issue in Coles was that the Commissioner had refused to reopen a

decision regarding an earlier period, and the court properly dismissed the appeal because

11

a federal court is, in fact, without jurisdiction to review the Commissioner's

determinations not to reopen an earlier decision.  Id. at *3-5.

  The court agrees with the Commissioner that 42 U.S.C. § 405(g) makes no provision

for judicial review of a determination which is in fact fully favorable to the complainant, and that

"[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful

conduct and likely to be redressed by the requested relief."  Allen, 468 U.S. at 751.  Here,

however, Plaintiff asserts that because the Commissioner erroneously found that she has

borderline personality disorder, his decision is not truly a fully favorable decision despite

the Commissioner's labeling of it as "Fully Favorable."  (R. 7).  As the Commissioner

admits, judicial review is available for "decisions that are 'adverse' to the plaintiff."

(Mot. to Dismiss 4) (citing Jones, 576 F.2d at 18).  If the Commissioner's finding was in

fact erroneous, and if Plaintiff was injured thereby as she alleges, the decision is not fully

favorable to Plaintiff despite the label, and she has standing to appeal that determination.

  The Commissioner's argument that judicial review under § 405(g) is "limited to

the question of conformity with the Social Security regulations and validity of those

regulations" (Mot. to Dismiss 4), simply misunderstands the statute.  Section 405(g), in

it's first sentence provides for review of a final decision of the Commissioner made after

a hearing in which the Plaintiff was a party.  It also provides in the first clause of sentence

five that in judicial review, "[t]he findings of the Commissioner as to any fact, if

supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court

must determine whether the factual findings are supported by substantial evidence and

whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084

(10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

      The Commissioner asserts that the court's review is limited to conformity with the

regulations and to the validity of the regulations based upon what he argues is the "plain

language" of sentence five of § 405(g).  However, the second clause of sentence five,

upon which the Commissioner relies, applies by its terms only to those situations in which

the Commissioner denied benefits because the claimant failed to submit proof in

conformity with the Social Security regulations.  42 U.S.C. § 405(g) (sentence five,

clause two).  In such cases, the court may review only the question of the claimant's

conformity with the regulations and the validity of those regulations.  See, e.g., Daubert v.

Sullivan, 905 F.2d 266, 268 (9th Cir. 1990) ("Where . . . a claim has been denied . . .

because of the failure of the claimant to submit proof in conformity with a regulation . . .,

we may 'review only the question of conformity with such regulations and the validity of

such regulations.'" (quoting 42 U.S.C. § 405(g)); Metcalf v. Schweiker, No. C-1-81-308,

1982 WL 45398 *3 (S.D. Ohio Nov. 1, 1982) ("Where a claim has been denied . . .

because of failure of the claimant to submit proof in conformity with any regulation, the

court is to review only the question of conformity with such regulation and the validity of

the regulation in question.") (citing 42 U.S.C. § 405(g)).  Such is not the case here.  The

decision below simply does not suggest that Ms. Robertson failed to submit proof in

conformity with the regulations.  In fact, as the Commissioner admits, Plaintiff was

awarded SSI benefits in this case.  Therefore, the second clause of sentence five does not

apply, and the court's jurisdiction is in accordance with sentence four of the statute--"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  To be sure, the first clause of sentence five also applies here--"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  Id.  Contrary to the Commissioner's argument, the statute does not preclude Plaintiff's standing to appeal the decision of the Commissioner.

Moreover, the court finds that Plaintiff meets the constitutional (Article III) requirements for standing in this case.  As the Commissioner argues, Plaintiff has the burden to establish constitutional standing by demonstrating (1) an injury in fact, (2) a causal relationship between the injury and the challenged action, and (3) a likelihood that the injury will be redressed by a favorable decision.  (Mot. to Dismiss 5-6) (citing Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998)).

Plaintiff asserts that the Commissioner erroneously determined that she has the impairment of borderline personality disorder which is severe within the meaning of the Social Security Act, that she was personally injured, or at least threatened with personal injury, by the Commissioner applying that pejorative finding, and that the court can modify the Commissioner's decision to remove that finding, or can at least order the Commissioner to remove the finding on remand.  The Commissioner argues that Plaintiff admits the record contains evidence that she was diagnosed with borderline personality

14

disorder, and has not alleged any actual, particularized injury resulting from the ALJ's finding that she has that impairment.  The court disagrees with the Commissioner.

Plaintiff clearly alleges injury resulting from the Commissioner's allegedly pejorative finding of a borderline personality disorder.  The injury Plaintiff alleges is akin to the injury one might receive from libel or defamation.  Such an injury is sufficient to confer Article III standing, so long as the plaintiff alleges an injury-in-fact that has a causal connection to the defendant and is redressable by a favorable court decision. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1214 n.1 (10th Cir. 2007) (Plaintiffs who did not have standing were dismissed from the case, but the case went forward with the remaining defamation plaintiffs).  The court finds that Ms. Robertson has alleged an injury-in-fact and a causal connection between the alleged injury and the Commissioner. Whether the record evidence supports and justifies the Commissioner's determination relates to the merits of the court's review of the decision, not to the question of constitutional standing.  Utah Animal Rights Coal. v. Salt Lake City, 371 F.3d 1248, 1256 (10th Cir. 2004) (court "must not confuse standing with the merits").

The Commissioner also argues that the alleged injury is not redressable by the court, that "a favorable decision would not result in any further benefits as Plaintiff has received all the benefits to which she is entitled.  Thus, any decision on the merits of Plaintiff's Complaint would not affect her right to disability benefits."  (Mot. to Dismiss 7).  The Commissioner is correct that the court is without authority to order increased disability benefits.  However, that fact does not mean that the injury alleged by Plaintiff is

15

not redressable by a favorable decision of he court.  As addressed above, the injury

alleged by Plaintiff is essentially that the Commissioner's erroneous decision produces an

injury-in-fact akin to that resulting from libel or defamation.  As also addressed above,

the statute under which the court has authority to review the Commissioner's decision

provides that "[t]he court shall have power to enter, upon the pleadings and transcript of

the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing."

42 U.S.C. § 405(g).  Therefore, if Plaintiff is correct and the Commissioner's finding of

borderline personality disorder is erroneous, the court may modify the Commissioner's

decision, and remove the erroneous finding.  Although factors of comity would usually

caution against the court directly modifying the Commissioner's decision, if the court

finds error in the finding of borderline personality disorder but not in the decision to

award SSI benefits, it has jurisdiction to reverse the decision, and remand to the

Commissioner with instructions to correct the decision, to remove all reference to and

consideration of borderline personality disorder, and to issue a new decision awarding

SSI benefits.  Clearly, under a correct understanding of the court's jurisdiction pursuant to

the Social Security Act, the injury alleged by Plaintiff is redressable by a favorable court

decision.  Plaintiff has both statutory and constitutional standing to bring this case seeking

judicial review of the allegedly erroneous decision of the Commissioner.  This matter

may not be dismissed for lack of standing.

### B.      Failure to State a Claim

The Commissioner argues that this case should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted.  He recognizes that under Rule 12(b)(6) the allegations in Plaintiff's complaint must be accepted as true and the facts must be construed in the light most favorable to Plaintiff.  (Mot. to Dismiss 8) (citing Arnold v. McClain, 926 F.2d 963, 965 (10th Cir. 1991)).  He argues that "Plaintiff can prove no set of facts that would entitle her to relief.  Assuming that Plaintiff's allegation are true and the evidence does not support the ALJ's finding of borderline personality disorder, such a conclusion would not entitle Plaintiff to any relief."  (Mot. to Dismiss 8).  Again, he argues that Plaintiff was already found disabled and awarded benefits, that the court cannot award greater benefits or rewrite the decision, and that even a remand could provide no "relief as Plaintiff has received all benefits to which she is entitled."  Id.

Again, as discussed above regarding standing, the Commissioner forgets the jurisdiction granted to the court by Congress in the Social Security Act.  Plaintiff is entitled to a decision supported by substantial record evidence, and if the decision is erroneous, a fact which Plaintiff asserts, and which the court must accept as true in deciding a 12(b)(6) motion, then the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  As discussed above in addressing the Commissioner's Article III standing argument, if the allegations in Plaintiff's Complaint ultimately prove true, the

17

court may grant the relief Plaintiff requests, either in the form of an order modifying the Commissioner's decision below, or in the form of an order reversing the decision, and remanding to the Commissioner with instructions to correct the decision, to remove all reference to or consideration of borderline personality disorder, and to issue a new decision awarding SSI benefits.  In her Complaint, Plaintiff has stated a claim over which the court has jurisdiction to grant relief.  Therefore, this matter may not be dismissed pursuant to Rule 12(b)(6).

### C.    Actual and Punitive Money Damages

In the last, and what should have been the only, argument of his Motion to Dismiss, the Commissioner asserts that Plaintiff's claims for actual and punitive damages must be dismissed because the Social Security Act does not authorize money damages as a remedy.  (Mot. to Dismiss 8) (citing Schweiker v. Chilicky, 487 U.S. 412, 424 (1988). He quotes 42 U.S.C. § 405(h) as prohibiting a cause of action under 28 U.S.C. §§ 1331, or 1346 to secure money damages under the Social Security Act.  Id. at 8-9.  He argues that actual and punitive damages are not available in judicial review of claims for disability benefits.  Id. at 9 (citing Cunningham v. Soc. Sec. Admin., 311 F. App'x 90, 92 (10th Cir. 2009); Talanker v. Barnhart, 487 F. Supp. 2d 149, 160 (E.D.N.Y. 2007); Ostroff v. State, 554 F. Supp. 347, 352 (M.D. Fla. 1983); Kenney v. Barnhart, No. SACV 05-426-MAN, 2006 WL 2092607, *5 (C.D. Cal. July 26, 2006).

In her Response, Plaintiff suggests supplemental jurisdiction pursuant to the Federal Tort Claims Act (FTCA) (Pl. Resp. 2), and appears to argue that an action under

the FTCA may be taken for money damages after final agency action denying a claim. Id. at 11 (citing 35A Am. Jur. 2d Federal Tort Claims Act § 182).[4]

The question of money damages in this case is governed by principles of federal sovereign immunity.  "The concept of [federal] sovereign immunity means that the United States cannot be sued without its consent." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jacks, 960 F.2d 911, 913 (10th Cir. 1992).  Unlike a state's Eleventh Amendment immunity, the federal government's consent to suit cannot be implied. Rather, consent may be found "only when Congress unequivocally expresses its intention to waive the government's sovereign immunity in the statutory text." United States v. Murdock Mach. & Eng'g Co. of Utah, 81 F.3d 922, 930 (10th Cir. 1996) (quotations and alterations omitted).  "[A]ny waiver of sovereign immunity must be construed strictly in favor of the sovereign and not enlarged beyond what its language requires." Haceesa v. United States, 309 F.3d 722, 728 (10th Cir. 2002) (quotations omitted).

In her complaint, Plaintiff asserts that the court's jurisdiction is founded on 42 U.S.C. § 405(g).  However, in her Response, Plaintiff at least implies that the Federal Tort Claims Act (FTCA) is the basis for her claims of actual and punitive damages.  The court will consider if, and to what extent the United States has waived sovereign immunity from suit as it applies to the facts of this case under each statute.

_____

[4]Plaintiff's citation was incomplete.  The court has attempted to complete it.

19

It is clear that the Social Security Act waives the United States' sovereign immunity from suit by "[a]ny individual, after a final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy," and provides that such an individual "may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g) (sentence one). There can be no doubt that the United States has waived immunity to suit and granted judicial review of final decisions of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). However, as the Commissioner points out the Social Security Act does not provide for money damages beyond the benefits due under the Act. There is simply no mention of either actual damages or punitive damages in the Act. Further, the court may not imply consent to suit for such damages absent the express intent of Congress, and the language of any waiver must be construed strictly in favor of the United States, and not enlarged upon.

Moreover, the Supreme Court has had several opportunities to consider whether a suit against the United States for the acts of the Commissioner of Social Security taken while awarding or withholding benefits pursuant to the Social Security Act might be founded upon some basis other than § 405(g).[5] Schweiker v. Chilicky, 487 U.S. 412

---

[5]The court is aware that the Supreme Court cases cited here deal specifically with litigation brought over disability benefit decisions made pursuant to Title II of the Social Security Act, whereas Plaintiff's decision was made pursuant to Title XVI of that Act. Moreover, §§ 405(g) and 405(h) of the Social Security Act are contained in Title 42 of

(1988) (A cause of action in the nature of a <u>Bivens</u> action for money damages is not justified because Congress provided an elaborate remedial scheme for reviewing Social Security decisions); <u>Weinberger v. Salfi</u>, 422 U.S. 749, 756-62 (1975) (42 U.S.C. § 405(h) precludes 28 U.S.C. § 1331 as a basis for suit under the Social Security Act); <u>Califano v. Sanders</u>, 430 U.S. 99, 104-09 (1977) (Administrative Procedures Act does not provide an independent basis for review of the decisions of the Commissioner).

Plaintiff does not explain in her Response how the FTCA provides a jurisdictional basis for money damages based upon the alleged errors of the Commissioner despite this substantial weight of Supreme Court case law denying any basis other than 42 U.S.C. § 405(g) for recovery due to erroneous decisions of the Commissioner of Social Security. The court does not find such a basis, and finds that the principles explained in <u>Chilicky</u> control here.  As the Court explained in <u>Chilicky</u>, Congress devised an "elaborate remedial scheme" concerning the award of Social Security benefits and judicial review of decisions of the Commissioner of Social Security.  487 U.S. at 414, 424-25.  Respondents in that case, including Mr. Chilicky, filed suit seeking money damages predicated on the constitutional tort theory of <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971), because of injury incurred when the Commissioner erroneously terminated their benefits

---

the United States Code within Title II of that Act.  However, Title XVI of the Social Security Act specifically provides that the decisions of the Commissioner pursuant to Title XVI of the Act "shall be subject to judicial review as provided in section 405(g) of this title <u>to the same extent as the Commissioner's final determinations under section 405 of this title</u>."  42 U.S.C. § 1383(c)(3). (emphasis added).

pursuant to the Social Security Administration's continuing disability review program.
Id. at 417-20.  The Court recognized the suffering and trauma undergone by the
respondents and for which they had been unable to receive compensation, id. at 428-29,
but it determined that in light of the remedial scheme devised by Congress in the Social
Security Act, and in light of the fact that Congress had not authorized a money damages
remedy in that scheme, the respondents' case seeking money damages must be dismissed.
Id. 487 U.S. at 429.

Here, as the Court noted in Chilicky, Congress has provided an "elaborate
remedial scheme" which does not provide for money damages.  In that scheme it also
provided 42 U.S.C. § 405(h) which specifically prohibits application of any other basis
for an "action against the United States, the Commissioner of Social Security, or any
other officer or employee thereof . . . to recover on any claim arising under this
subchapter."  42 U.S.C. § 405(h).  The Federal Tort Claims Act is just such an other basis
for action which would interfere with application of the scheme Congress designed.  It is
not for this court to expand the bases for remedies in Social Security cases.

Therefore, the court finds that Plaintiff's claims for actual and punitive money
damages must be dismissed in their entirety, but her claim for judicial review of the
Commissioner's final decision dated June 10, 2010 may not be dismissed, and judicial
review will be had.

**III.    Judicial Review of the Final Decision of the Commissioner**

The court finds that substantial evidence in the record supports the Commissioner's finding that Plaintiff's combination of severe impairments includes borderline personality disorder.  Consequently, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision below.

**A.**   **Background**

Plaintiff applied for SSI benefits on May 15, 2009, alleging disability beginning August 23, 2007.  (R. 125-30).  In due course, Plaintiff appeared with counsel for a hearing before ALJ Michael R. Dayton on March 25, 2010.  (R. 10, 17-54).  At the hearing, testimony was taken from Plaintiff and from a friend of Plaintiff.  (R. 10, 17-54).  On June 10, 2010, ALJ Dayton issued a decision finding that Plaintiff has been disabled within the meaning of the Social Security Act since August 23, 2007 because of a severe combination of impairments including borderline personality disorder, and granting her application for SSI benefits.  (R. 10-16).  Plaintiff disagreed with the ALJ's finding that she had the severe impairment of a borderline personality disorder and requested Appeals Council review of the ALJ's decision.  (R. 111-12).  The Appeals Council found no reason under the rules of the Social Security Administration to review the ALJ's decision and denied Plaintiff's request.  (R. 1).  Therefore, the ALJ's decision became the final decision of the Commissioner.  Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision.  (Doc. 1).

**B.**   **Legal Standard**

23

The court's jurisdiction and review are guided by the Act.  Salfi, 422 U.S. at 763 (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)); see also, 42 U.S.C. § 1383(c)(3) (SSI decision "shall be subject to judicial review as provided in section 405(g)").  Section 405(g) provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax, 489 F.3d at 1084; accord, White, 287 F.3d at 905.  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere

conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir.

1989).

The Commissioner uses a five-step sequential process to evaluate disability.  20

C.F.R. § 416.920 (2010)[6]; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing

Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be

made at any of the steps that a claimant is or is not disabled, evaluation under a

subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at

1084).  In the first three steps, the Commissioner determines whether claimant has

engaged in substantial gainful activity since the alleged onset, whether she has a severe

impairment(s), and whether the severity of her impairment(s) meets or equals the severity

of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).

Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses

claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment

is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five in the sequential process--

determining whether claimant can perform past relevant work; and whether, considering

vocational factors of age, education, and work experience, claimant is able to perform

other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).

---

[6]Because the Commissioner's decision in this case was issued on June 10, 2010 every citation to the Code of Federal Regulations in this opinion, unless otherwise stated, refers to the 2010 edition of 20 C.F.R. Parts 400 to 499, Revised as of April 1, 2010.

In the decision at issue here, the ALJ determined that Plaintiff is disabled within the meaning of the Social Security Act and approved her application for benefits, but Plaintiff has nonetheless alleged error in that decision.  She "specifically challenge[s] the validity of the consultative examination" and report of Dr. Coleman, dated August 13, 2009 (R. 378-82 (Ex. 9F)), and claims that the finding of borderline personality disorder and the moderate functional limitations in her abilities to maintain concentration and attention, to interact with the general public, and to get along with co-workers or peers which were assessed by the ALJ are unsupported by the evidence or are an abuse of discretion.  (Complaint 3).

## C.    Discussion

### 1.    The ALJ's Decision

With regard to mental impairments, the ALJ found that Plaintiff has an adjustment disorder and borderline personality disorder.  (R. 12) (finding no. 2).  He determined these impairments are "severe" within the meaning of the Social Security Act--that is, in combination they "have had more than a minimal effect on [Plaintiff's] ability to perform basic work activities for a continuous period of 12 months."  (R. 12).  In assessing Plaintiff's RFC, the ALJ determined Plaintiff "is also moderately limited in her ability to maintain concentration for extended periods, interact appropriately with the general public, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes."  (R. 13).  The ALJ included the following discussion regarding the record evidence with respect to mental impairments:

The claimant has also been diagnosed with mental impairments. During a consultative examination [with Dr. Coleman], she was reported to have adjustment disorder with depression and borderline personality disorder (Exhibit 9F, p.4 [(R. 381)]). The examiner also noted the claimant was capable of displaying extreme rages, had extensive paranoid thoughts, rapid speech, and needed to be brought into focus multiple times (Exhibit 9F, p.4 [(R. 381)]). In addition, the claimant has previously reported [to Dr. Wilcox] loss of energy, emotional stress, depressed mood, and sleep disturbances (Exhibit 1F, p.2, 3 [(R. 282-83)]).

* * *

Lauren A. Cohen, Ph.D., provided an opinion based upon her review of the claimant's records on behalf of the State Disability Determination Service (DDS) (Exhibits 12F, 13F [(R. 390-407)]). Dr. Cohen's opinion identifies the same mental limitations as those used in the residual functional capacity, above. This opinion is consistent with the longitudinal medical record, including descriptions of the claimant's mental condition provided by a former treating physician, as discussed above. As a result, the undersigned finds this opinion persuasive and gives it significant weight.

The other State agency psychological consultant's mental assessment, provided by Robert L. McRoberts, is given little weight because the opinion of Dr. Cohen is more consistent with the record as a whole (Exhibit 17F [(R. 452-65)]). In addition, Dr. McRoberts' opinion, which notes insufficient evidence to determine the claimant's capabilities, is inconsistent with the previous DDS opinion provided by Dr. Cohen and the longitudinal medical records, discussed above.

(R. 14).

> 2.   Plaintiff's Allegations

Plaintiff challenges the validity of Dr. Coleman's examination and report. (Complaint 3). She also argues that Dr. Coleman is a nontreating source who never had a treatment relationship with Plaintiff, and his opinion is not worthy of the weight of which it was accorded in the decision. (Pl. Resp. 5). She argues that the ALJ incorrectly

assigned weight to all of the medical opinions of record regarding her mental condition,

and that there is insufficient evidence in the record to find a severe borderline personality

disorder as assessed by the ALJ.  Id. at 5-6.

3.    The Validity of Dr. Coleman's Examination and Report

Plaintiff does not challenge Dr. Coleman's qualifications as a psychologist, and

she admits that he examined her and prepared a report of that examination dated August

13, 2007.  (Complaint 3).  Her argument is that in the last twenty years she was not

otherwise diagnosed with borderline personality disorder and has only been diagnosed

with adjustment disorder by two medical doctors and two licensed clinical social workers.

Id.  However, she does not name these mental healthcare providers or cite to their

diagnoses in the record evidence.   She does not argue that these healthcare providers

opined that she did not have borderline personality disorder, or (more importantly) that

they opined that her condition would preclude a diagnosis of borderline personality

disorder.  Further, the court's review of the record does not reveal any medical opinion

affirmatively stating that Plaintiff does not have borderline personality disorder or that her

condition would preclude such a diagnosis.

Moreover, Plaintiff is precluded from arguing at this point in time that Dr.

Coleman is not qualified as a psychologist or that his report should not have been

admitted into the record.  As Plaintiff admits, Dr. Coleman's report is identified as

Exhibit 9F in the administrative record.  (Complaint 3) (citing Ex. 9F (R. 378-82)).  At

the hearing, where Plaintiff was represented by an attorney, the ALJ stated that he had

28

marked certain exhibits in the file which he believed to be relevant to Plaintiff's case.  (R. 19-20).  Those exhibits included "1 through 17 in part F."  (R. 20).  The ALJ asked if there were any objections to the documents identified being admitted into evidence, and Plaintiff's attorney responded, "No, Your honor."  Id.  Thus, through her attorney Plaintiff agreed to the admission of Dr. Coleman's report as evidence in the case. Plaintiff points to no record evidence where she presented an objection to the admission or validity of Dr. Coleman's report to the ALJ after this point in time and before the ALJ issued his decision on June 10, 2010.  The court's review of the record finds no such objection presented to the ALJ during that timeframe.  If there was any error in the admission of Dr. Coleman's report, the error was invited by Plaintiff's statement that she had no objection to that exhibit.  The court's duty is to determine wether the ALJ applied the correct legal standard and whether substantial evidence in the administrative record supports the ALJ's decision.  It is without jurisdiction (or the means) to conduct a de novo determination regarding the admissibility of evidence which was not challenged before the ALJ, and which was admitted without objection below.

### 4.    The Weighing of the Medical Opinions

"Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  The regulations provide that the Commissioner

may use evidence from "other medical sources" such as licensed clinical social workers not on the list of "acceptable medical sources" to show the severity of plaintiff's impairments and how they affect her ability to work.  20 C.F.R. § 416.913(d).

Opinions from any medical source must not be ignored, and will be evaluated by the Commissioner in accordance with factors contained in the regulations.  20 C.F.R. § 416.927(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2012).  Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at § 416.927(d)(2-6); see also Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995).

A physician who has treated a patient frequently over an extended period of time (a treating source)[7] is expected to have greater insight into the patient's medical

---

[7]The regulations define three types of "acceptable medical sources:"
"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. § 416.902.
"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

condition, and his opinion is generally entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

Plaintiff argues that Dr. Coleman is a nontreating source, and as such his opinion was accorded too much weight.  But she points to no record evidence which would compel that conclusion.  She implies that treating source opinions should have been given greater weight than Dr. Coleman's opinion, but she points to no treating source opinion in the record regarding Plaintiff's mental condition which was contrary to Dr. Coleman's opinion or which should have been accorded greater weight than Dr. Coleman's opinion.  In a similar vein, Plaintiff argues that the ALJ erroneously weighed the medical opinions of Dr. Cohen and Dr. McRoberts, nonexamining state agency psychologists who provided opinions regarding Plaintiff's mental condition after reviewing the record evidence.

---

"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

31

Regarding Dr. Cohen's opinion (R. 390-407), the ALJ noted that the mental limitations in his RFC assessment agreed with those opined by Dr. Cohen.  (R. 14).  He accorded "significant weight" to Dr. Cohen's opinion because it was consistent with the longitudinal medical record including descriptions of Plaintiff's mental condition provided by a former treating physician.  Id.  Dr. Cohen provided extensive rationale for her opinion (R. 402, 406).  The rationale for Dr. Cohen's opinion is based on record evidence, and the court's review reveals that the evidence supports Dr. Cohen's analysis. Dr. Cohen expressed that one of Plaintiff's physicians indicated in October and November, 2007 that Plaintiff believed certain family members were responsible for her son's death and had been looking for scriptural evidence to support her belief.  (R. 402). The record reveals that Dr. Curiel is the physician who indicated Plaintiff's belief's in this regard in his October and November 2007 treatment notes.  (R. 327, 335, 346, 356). Likely because of this connection, Plaintiff identified Dr. Curiel as the "former treating physician" to whom the ALJ referred in finding that Dr. Cohen's opinion was consistent with the longitudinal medical record.  (Pl. Resp. 7).  The court also notes that the ALJ identified the treatment notes of her chiropractor, Dr. Wilcox as medical records in which Plaintiff had "previously reported loss of energy, emotional stress, depressed mood, and sleep disturbances."  (R. 14) (citing Ex. 1F, pp.2-3 (R. 282-83)).  In either case, the records identified by Plaintiff and by the ALJ tend to support the ALJ's finding that Dr. Cohen's opinion is consistent with the longitudinal medical record.  Plaintiff argues that this evidence does not suffice to accord significant weight to Dr. Cohen's opinion.  The

court disagrees.  As discussed above, the evidence supports the ALJ's assignment of significant weight to Dr. Cohen's opinion.  Although Plaintiff clearly does not agree with the ALJ's conclusion, she points to no record evidence tending to negate his findings.

The ALJ also stated the bases for his determination to give "little weight" to Dr. McRoberts's opinion that there is insufficient evidence to determine Plaintiff's mental limitations.  (R. 14).  He did so because Dr. McRoberts's opinion is inconsistent with Dr. Cohen's opinion and with the longitudinal medical record.  Id.  For the same reasons that the weight accorded to Dr. Cohen's opinion is supported by record evidence, the weight accorded Dr. McRoberts's opinion is supported by record evidence.  Plaintiff points to no record evidence requiring or even supporting a contrary determination.

Absent evidence requiring a different determination than that made by the ALJ, the court could not find error in the ALJ's determination even if Plaintiff pointed to some record evidence supporting a different conclusion.  Plaintiff must demonstrate error in the ALJ's rationale or determination; the mere fact that the record contains evidence which might support a finding contrary to that made by the ALJ will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted).  Therefore, where the ALJ has reached a reasonable conclusion that is

33

supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

The examination and report of Dr. Coleman, and the opinion and analysis of Dr. Cohen each constitute record evidence supporting the ALJ's finding that Plaintiff has the mental impairment of borderline personality disorder and supporting his RFC findings that Plaintiff "is also moderately limited in her ability to maintain concentration for extended periods, interact appropriately with the general public, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes."  (R. 13). Plaintiff points to no record evidence requiring contrary findings.  Therefore, the court finds that the ALJ's factual findings are supported by substantial evidence in the record. Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that the Clerk of the Court shall seal the administrative record in this case (Doc. 8, and its attachments).

**IT IS FURTHER ORDERED** that the Commissioner's Motion to Dismiss (Doc. 7) shall be GRANTED in part and DENIED in part. The motion shall be GRANTED to the extent that Plaintiff's claims for $250,000 in actual damages and $250,000 in punitive damages shall be dismissed in their entirety.  The motion shall be DENIED to the extent that the court finds Plaintiff has standing to bring her claim for judicial review, and that she has stated a claim for judicial review upon which relief might be granted.

34

**IT IS FURTHER ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision below.

Dated this 25th day of January 2013, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

35